Mr. Mark Burnette, Attorney Mitchell, Blackstock, Barnes, Wagoner Ivers 1010 W. 3rd Street Little Rock, AR 72201
Dear Mr. Burnette:
You have requested an Attorney General opinion, pursuant to A.C.A. §25-19-105(c)(3)(B), a section of the Freedom of Information Act (FOIA) (A.C.A. § 25-19-101 through -107), concerning the release of certain records under the FOIA.
You indicate that you represent three individuals who work for the Little Rock School District. The Arkansas Democrat-Gazette has requested certain records from your clients' personnel files. It is your understanding that the custodian of the records has determined that the records will be released (absent a contrary opinion from this office). It is your position that some of these records should not be released. You have given me an opportunity to review the records in question. Those that you believe should not be released are the following:
Regarding Employee No. 1
 • A memorandum dated April 27, 1998, from Employee No. 1's principal, informing Employee No. 1 that he is to be suspended for three days. The memorandum details the reasons for the suspension. This memorandum contains statements about a student.
 • A memorandum dated April 20, 1998, from another employee to Employee No. 1's principal, detailing incidents related to the suspension. This memorandum contains statements about a student.
 • A memorandum dated April 17, 1998, from Employee No. 1 to his principal, detailing the incidents that gave rise to the suspension. This memorandum contains references to a student.
 • A "Witness Statement" given by a 9th-grader, dated April 30, 1998, detailing an exchange between Employee No. 1 and another employee.
 • A memorandum dated April 16, 1998, from another employee to Employee No. 1's principal, detailing the incidents that gave rise to the suspension. This memorandum contains references to a student.
• A receipt from the Pine Bluff Police Department for photostats.
 • An incident report dated April 18, 1998 by the Pine Bluff Police Department.
 • A letter dated April 19, 1998 to the Little Rock School District from another employee's mother, detailing the incidents that gave rise to the suspension.
 • A letter dated April 20, 1998, to the Little Rock School District from the author of the April 19 letter.
 • A letter dated April 20, 1998, from the prosecuting attorney of the Sixth Judicial District, to Employee No. 1.
 • An undated document (partially typed and partially handwritten) that appears to be a rough draft of a suspension letter to Employee No. 1. This document contains references to a student.
 • An undated, handwritten document containing notes related to the incidents that gave rise to the suspension. This document contains references to a student.
 • A handwritten memorandum dated April 16, 1998, by another named employee, detailing the incidents that gave rise to the suspension. This memorandum contains references to a student.
• A sample request for an Attorney General's opinion.
 • Copies of three Freedom of Information request letters, all dated May 2, 2001.
Regarding Employee No. 2.
 • A letter dated January 27, 1999, from the Little Rock School District to the executive director of the Little Rock Classroom Teachers Association.
 • A letter dated July 24, 1998, from the Athletic Director to Employee No. 2.
 • A letter dated February 8, 2000, regarding Employee No. 2's compensation.
 • A memorandum dated September 30, 1997, from Dr. Walter Masshalek to the Athletic Administrator.
Regarding Employee No. 3.
 • Transcripts of various interviews by the Director of Safety and Security for the Little Rock School District, taking statements detailing incidents that gave rise to Employee No. 3's suspension.
 • A memorandum dated August 11, 2000, from the Director of Safety and Security for the Little Rock School District to the Coordinator of Pupil/Personnel Safety, summarizing his findings regarding incidents that gave rise to Employee No. 3's suspension.
 • A memorandum dated September 6, 2000, from Employee No 3's principal to a drug/violence prevention specialist.
 • A letter dated August 18, 2000, from Employee No. 3's principal, informing Employee No. 3 of his suspension.
 • A memorandum dated August 15, 2000, regarding the scheduling of a mediation conference related to the incidents that gave rise to Employee No. 3's suspension.
 • An agreement, dated August 31, 2000, between Employee No. 3 and another employee.
 • A memorandum dated January 27, 1998, detailing an incident that took place on January 27, 1998, and that gave rise to Employee No. 3's suspension.
 • A handwritten incident report dated January 27, 1998, detailing an incident that took place on January 27, 1998, and that gave rise to Employee No. 3's suspension.
 • A undated memorandum informing Employee No. 3 of his suspension for January 24, 25, and 26, 2001.
• A sample request for an Attorney General's opinion.
 • Copies of three Freedom of Information request letters, all dated May 2, 2001.
I am directed by law to issue an opinion as to whether the custodian's determination regarding the release of the requested records is consistent with the FOIA. A.C.A. § 25-19-105(c)(3)(B).
RESPONSE
It is my opinion, as explained more fully below, that some of the records should be released, and that others should not be released, under the tests for releasability that are applicable to the various records. Before discussing the particular records, I will set out those tests.
Some of the records are "personnel records" and others are "employee evaluation/job performance records." These two types of records are subject to two different standards of releasability.
Personnel Records
The FOIA does not define the term "personnel records." However, this office has consistently taken the position that "personnel records" are all records, other than employee evaluation/job performance records (discussed below), that pertain to individual employees, former employees, or successful job applicants. See, e.g., Ark. Ops. Att'y Gen. Nos. 2000-130; 99-147, citing Watkins, The Arkansas Freedom ofInformation Act (m m Press, 3d ed. 1998), at 134.
Under the FOIA, personnel records are subject to disclosure except to the extent that their release would constitute a "clearly unwarranted invasion of [the] personal privacy" of the employee to whom the records pertain. A.C.A. § 25-19-105(b)(12).
Employee Evaluation/Job Performance Records
The FOIA also does not define the term "employee evaluation/job performance records." I have taken the position that records relating to an employee's performance or lack of performance on the job are properly classified as "employee evaluation/job performance records" under the FOIA. See, e.g., Op. Att'y Gen. No. 2000-242.
"Employee evaluation/job performance records" are exempt from disclosure to the public unless the following three conditions have been met:
 • There has been a final administrative resolution of any suspension or termination proceeding;
 • The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 • There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1).
It should be noted that the presupposition of the above-stated test is that there was final administrative decision that ended in a suspension or termination.
It is my understanding that Employees Nos. 1 and 3 were suspended, and that there as been a final administrative resolution of these suspensions. It is my further understanding that Employee No. 2 was not suspended or terminated.
Employee No. 1's Records
It is my opinion that the suspension memorandum dated April 27, 1998, should be released. It is not exempt from disclosure under the FOIA. (However, as explained more fully below, certain information should be redacted from this record pursuant to federal law and pursuant to a new provision of the FOIA.)
Suspension letters that detail the incidents that gave rise to the suspension constitute employee evaluation/job performance records. Ark. Ops. Att'y Gen. Nos. 2000-267; 2000-203; 97-400. Because Employee No. 1 was suspended and there was a final administrative resolution of his suspension, and because this memorandum contains details of the incidents that formed a basis for the suspension, the remaining question is whether there is a compelling public interest in this memorandum. It is my opinion that there is a compelling public interest in this record. The parents of public school students typically have a particularly compelling interest in the conduct of their children's teachers during school-related events. For this reason, I conclude that all three conditions for the releasability of this record have been met. It is therefore not exempt from disclosure under the FOIA, and should be released.
Nevertheless, certain information must be redacted from this record before it is released. Because this record contains information about a student, it implicates the Federal Educational Rights Privacy Act (20 U.S.C. § 1232g) (FERPA), as well as a new language that has recently been added to the Arkansas FOIA.
The FERPA generally provides that educational institutions can lose their federal funding if they disclose "education records" or "personally identifiable information contained therein" without the written consent of the student (or the student's parent if the student is under the age of eighteen. 20 U.S.C. § 1232g(b)(1). The term "education records" is defined broadly in the FERPA as "records, files, documents and other materials which . . . contain information directly related to a student."20 U.S.C. § 1232g(a)(4)(A). Although the FERPA does contain some exceptions from its confidentiality requirements, the suspension letter does not fall within any of the exceptions. Therefore, if the school district fails to redact this student's name or other personally identifying information about the student without the parent's consent before releasing this record, it will risk losing any federal funding that it receives.
Moreover, the student's name or personally identifying information should be redacted under a new language that has been added to the Arkansas FOIA. Act 1653 of 2001 added the following language to the FOIA:
 (b) It is the specific intent of this section that the following shall not be deemed to be made open to the public under the provisions of this chapter:
* * *
 (2) . . . education records as defined in the Federal Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g, unless their disclosure is consistent with the Federal Educational Rights and Privacy Act of 1974[.]
A.C.A. § 25-19-105(b)(2).
It is my opinion that the memoranda dated April 20 and April 17, the student's Witness Statement, and the memorandum dated April 16, should be released. These records are not exempt from disclosure under the FOIA. These records all contain statements related to the incidents that gave rise to Employee No. 1's suspension. It is not clear whether these statements were given voluntarily, or at the behest of the employer as a part of an investigation of Employee No. 1's conduct. If these statements were given at the behest of the employer, these records constitute employee evaluation/job performance records. (Statements given at the behest of an employer during the course of an investigation of an employee's conduct constitute employee evaluation/job performance records. Ark. Op. Att'y Gen. No. 2001-123.) As explained in connection with the suspension memorandum, the three conditions for the disclosure of these records have been met. If these statements were given voluntarily, these records constitute personnel records, and should be released under the standard for the releasability of personnel records. In my opinion, they contain no information in which Employee No. 1 (or any other employee) has a privacy interest that outweighs the public's interest.) Again, however, any students' names and other personally identifying student information should be redacted before these records are released.
It is my opinion that the receipt from the Pine Bluff Police Department and the Police Department incident report should be released. Neither of these records falls within any exemption from disclosure under the FOIA or any other law.
It is my opinion that the two letters, dated April 19 and April 20, from the other employee's mother, are not exempt from disclosure. Again, it is not clear whether these letters were written voluntarily or at the behest of the employer. If they were written voluntarily, they constitute personnel records. Unsolicited statements given by third parties are personnel records, rather than employee evaluation/job performance records, and are therefore subject to the standard for the release of personnel records. Ark. Op. Att'y Gen. No. 2001-123. In my opinion, these letters are releasable under that standard. Because, as noted previously, the parents of public school students have a heightened interest in the conduct of their children's teachers, it is my opinion that the public's interest in records reflecting the conduct of a public school teacher outweighs any privacy interest therein. If these letters were written at the behest of the employer, they constitute employee evaluation/job performance records, and the conditions for their release have been met.
It is my opinion that the letter dated April 20, 1998, from the prosecuting attorney should be released. This record is not exempt from disclosure under the FOIA. It is a personnel record, in which the public, in my opinion, has an interest that outweighs any privacy interest that Employee No. 1 may have in it.
It is my opinion that the undated rough draft of the suspension letter should be released. Although this record does not explicitly mention Employee No. 1, it appears to be directed to him, and appears to constitute an employee evaluation/job performance record. Like the employee evaluation/job performance records discussed above, it meets the standard for releasability. Again, students' names and other personally identifying student information should be redacted.
It is my opinion that the undated handwritten notes should be released. Because this record appears to detail incidents that gave rise to Employee No. 1's suspension, it constitutes an employee evaluation/job performance record, and has met the standard for releasability.
It is my opinion that the handwritten memorandum by another employee should be released. If this memorandum was written at the behest of the employer in the course of investigating the conduct of Employee No. 1, it constitutes an employee evaluation/job performance record, and the conditions for its release have been met. If it was written voluntarily, it constitutes a personnel record. In my opinion, the public's interest in this record outweighs any privacy interest that Employee No. 1 may have in it.
It is my opinion that the sample opinion request letter and the Freedom of Information request letters are not exempt from disclosure under the FOIA or any other law, and should therefore be released.
It should be noted that many of the above-described records contain references to employees other than Employee No. 1. They therefore constitute the personnel records of those employees, in addition to constituting records related to Employee No. 1. Using the analysis for the release of personnel records, I find no privacy interest of those other employees that would outweigh the public's interest in these records.
Employee No. 2's Records
It is my opinion that the letters dated January 24, 1998 and July 27, 1999, are not subject to release. These records constitute employee evaluation/job performance records. Because Employee No. 2 was not suspended or terminated, the first condition for the release of these records has not been met.
It is my opinion that the letter dated February 8, 2000, is a personnel record and is subject to release. Because it pertains to Employee No. 2's compensation, the public's interest in it outweighs any privacy interest he might have in it.
It is my opinion that the memorandum dated September 30, 1997, is not subject to release. It appears to contain information related to Employee No. 2's performance on the job, and is therefore an employee evaluation/job performance record. Again, because Employee No. 2 was not suspended or terminated, this record should not be released.
Employee No. 3's Records
It is my opinion that the following records of Employee No. 3 are employee evaluation/job performance records and should be released:
 • The interview transcripts. These statements were clearly given at the behest of the employer in the course of investigating the conduct of an employee. They therefore constitute employee evaluation/job performance records.
 • The memorandum dated August 11, 2000. This record details the incident that gave rise to Employee No. 3's suspension.
 • The memorandum dated September 6, 2000, from Employee No. 3's principal to a drug/violence specialist. It pertains to the incident that gave rise to Employee No. 3's suspension.
 • The suspension letter dated August 18, 2000. It details the incident that gave rise to Employee No. 3's suspension.
 • The memorandum dated August 15, 2000. It pertains to the incident that gave rise to Employee No. 3's suspension.
I note that some of the above-listed records also constitute the employee evaluation/job performance records of another employee. Both of the employees to whom these records pertain were suspended. It is my opinion that all the other conditions for the release of these records have been met as well. As discussed previously, the public has a compelling interest in the conduct of public school teachers during school hours and on school property.
It is my opinion that although the agreement dated August 31, 2000, does not appear to be exempt from disclosure under the FOIA, it should not be released until it is determined whether this record is subject to any confidentiality requirements that are imposed by law. The legal authority under which this document was created is not clear. This issue must be determined before this record can be released.
It is my opinion that the following records, all of which detail the January 27, 1998, incident that gave rise to a suspension of Employee No. 3, are employee evaluation/job performance records, and should be released, with students' names and other personally identifying student information redacted:
• The memorandum dated January 27, 1998.
• The incident report dated January 27, 1998.
 • The suspension memorandum, informing Employee No. 3 of his suspension on January 24, 25, and 26, 2001.
It is my opinion that the sample opinion request letter and the Freedom of Information request letters are not exempt from disclosure under the FOIA or any other law, and should therefore be released.
As was the case with some of the records discussed previously, some of Employee No. 3's records contain references to other employees and can therefore constitute the personnel records of those employees. It is my opinion that all such records are releasable under the standard that is applicable to personnel records, because the public interest in them outweighs any privacy interest therein.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General